# EXHIBIT A

# EXHIBIT A

Lynn C. Harris (01382)
JONES WALDO HOLBROOK & MCDONOUGH
3325 North University Avenue, Suite 200
Provo, Utah 84604
Telephone: 801-375-9801
Facsimile: 801-377-1149
lharris@joneswaldo.com

*Attorney for Plaintiff*

IN THE SECOND JUDICIAL DISTRICT COURT
IN AND FOR DAVIS COUNTY,
STATE OF UTAH

| | | |
|---|---|---|
| CODY DEE SKINNER | : | |
| | : | |
| Plaintiff, | : | COMPLAINT AND |
| | : | JURY DEMAND |
| vs. | : | |
| | : | Case No. 190700923 |
| BERRY PETROLEUM COMPANY, LLC; | : | |
| HOLLY FRONTIER WOODS CROSS | : | Judge John R. Morris |
| REFINING & MARKETING LLC; and | : | |
| HOLLY FRONTIER WOODS CROSS | : | TIER 3 |
| REFINING LLC, | : | |
| | : | |
| Defendants. | | |

Plaintiff Cody Dee Skinner ("Plaintiff") hereby complains against

Defendants Berry Petroleum Company, LLC ; Holly Frontier Woods Cross

Refining & Marketing, LLC; and Holly Frontier Woods Cross Refining, LLC, and

hereby demands a trial by jury, and seeks relief as follows:

## NATURE OF CASE

1.      This is a personal injury action brought by Plaintiff to recover

general and special damages in a sum subject to proof at trial caused by the

negligence of above-named Defendants.

1

## PARTIES

2.      Plaintiff is a Utah citizen and resident of Riverton, Salt Lake County, Utah and was at all times relevant to this matter an employee crude oil truck driver for Savage Industries Inc. Plaintiff was injured at the Brundage Canyon Well Site Ute Tribal 14-29-54, on tribal lands lying within Duchesne County, State of Utah, on December 26, 2017.

3.      Berry Petroleum Company, LLC ("Berry") is a Delaware corporation that maintains its principal place of business in Bakersfield, California. Berry conducts significant business in the State of Utah. Specific to this action, Berry owns and operates oil well drilling and storage sites in the Uinta Basin oil fields area of Utah.  Berry is registered with the State of Utah and has designated as its registered agent for service the CT Corporation System, 1108 E South Union Avenue, Midvale Utah 84047.

4.      Berry owned the oil well site location and the oil production facilities at this specific property location and operated an oil extraction well and an oil well storage tank(s) facility on this specific well site. On information and belief, this oil well site is owned and operated by Berry under a lease from the Ute Indian Tribe.

5.      Holly Frontier Woods Cross Refining, LLC ("HFWCR") is a Delaware corporation that maintains its headquarters and its principal place of business in Dallas, Texas. HFWCR conducts significant business in the State of

2

Utah. Specific to this action, HFWCR refines oil obtained from the Uinta Basin oil fields and that oil is then transported to the Woods Cross Refinery.  HFWCR is registered with the State of Utah and has designated as its registered agent for service the CT Corporation System, 1108 E South Union Avenue, Midvale Utah 84047.

6.      Holly Frontier Woods Cross Refining & Marketing, LLC ("HFWCR&M") is a Delaware corporation that maintains its headquarters and its principal place of business in Woods Cross, Davis County, Utah – where its officers and administrators direct, control and coordinate the HFWCR&M corporation's important business. Specific to this action, HFWCR&M purchases refined oil obtained from the Berry/Uinta Basin oil fields and contracts to transport the crude oil by trucks to the Woods Cross Refinery.  HFWCR&M is registered with the State of Utah and has designated as its registered agent for service the CT Corporation System, 1108 E South Union Avenue, Midvale Utah 84047.

7.      On information and belief, both HFWCR and HFWCR&M had a contract with Berry to purchase the oil extracted and stored at Berry's on-site large metal oil tanks at the location referred to above.

8.      On information and belief, both HFWCR and HFWCR&M had a contract with Savage Industries Inc. to unload/pump the oil from the site's large tanks, and thereafter to transport in crude oil trucks all of the extracted oil to their Woods Cross Refinery for processing and marketing and sale.

## JURISDICTION AND VENUE

9.     This court is vested with jurisdiction of this case pursuant to Utah Code Ann. § 78A-5-102(1).

10.     Venue is proper in this court pursuant to Utah Code Ann. § 78B-3-307(2), as HFWCR&M has its principal office or place of business in Woods Cross, Davis County, Utah and thus Davis County is to be considered the County in which HFWCR&M resides for venue jurisdiction.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

11.     Berry owns and operates the oil well extraction site and operation - Brundage Canyon Well Site Ute Tribal 14-29-54 - in the Uinta Basin of the State of Utah. Following the oil extraction process, the thick crude oil is stored in large metal storage tanks pending purchase and transportation to a refinery.

12.     Before the thick wax-like crude oil extracted and stored at this site can be loaded onto large trucks to be transported to a refinery facility, there must be a chemical process conducted to both thin the wax-like crude oil and to heat the treated crude oil to an appropriate and safe temperature to allow the treated oil to be pumped from the large storage tanks and into the large crude-oil trucks for travel and transfer to the refinery.

13.     This process of thinning and heating the crude oil is performed by employees of Berry called "pumpers." The process involves an individual pumper measuring the amount of oil in the tank and adding the necessary chemicals to thin and heat the oil in preparation for transport to a refinery. In

4

order to perform these tasks, the Berry pumper has to access the contents of the tank via a large tank-lid located on the top of the large storage tanks.

14.    The tanks are not filled with oil to the top and full capacity of the storage tank. There must be a significant area of space left open from the top of the stored oil to the top of the tank. In this area of several feet of space potentially dangerous and lethal condensation gases and fumes collect from the stored crude oil. Each tank is to be fitted with an appropriate and operating ventilation system to allow these dangerous condensation gases and fumes to be vented outside the tank. This venting process is to prevent any pressurized build-up of the condensation gases and fumes within this top space area located directly below the large tank-lid. This tank-lid lid has to be opened to allow access to the oil by several different individuals during the thinning, gauging pumping and transportation processes.

15.    It is well known and long established in the oil extraction and storage operation business that the above-described condensate comprises several very dangerous chemical components, including H2S, known to be a significant and lethally dangerous chemical component of this type of oil storage tank condensate, gases and fumes.

16.    It is well known and long established that this oil tank condensate is dangerous and lethal to humans and must be controlled to not allow humans to be exposed to this condensate, and specifically to not be exposed in such a manner as to either breathe in the condensate or become physically covered by the condensate on his person or clothing.

5

17.     The oil industry has long established safety policies and procedures mandated to be in place at an oil tank site to avoid any and all human exposure to oil tank chemical condensate.

18.     After the Berry pumper completes the above-described tasks, the pumper presents his report of the process followed, his measurements and the successful completion of the thinning and warming chemical process to the local Berry supervisors and administrators.

19.     In this specific instance the Berry oil that was extracted, stored and thinned was to be sold to HFWCR&M to be refined in its Woods Cross Refinery and thereafter to be sold on the open oil market. Thus, Berry supervisors being notified that the stored oil was now thinned and heated, thereafter contacted HFWCR&M – the buyer - and informed them that the oil was ready to be transported to their Woods Cross refinery.

20.     At this point in time, and before the oil is to be physically transferred to an oil truck for transportation to their facility, HFWCR&M's practice is to send to the specific oil well storage site one of their own trained employees, known as a "gauger." This employee is to access the stored oil - via the same tank-lid used by the Berry pumper – to measure the amount and depth and heated thinness of the oil that is being purchased from Berry by HFWCR&M.

21.     Following this HFWCR&M measuring process to verify the Berry measurements and associated data, the HFWCR&M process is to next contact Savage Industries to send a driver and a crude-oil truck to the site to facilitate the

actual pumping and transportation of the newly purchased Berry oil to their
Woods Cross Refinery.

22.     On information and belief and following a partial investigation into
this injury incident, each of the above chronological processes occurred: (1) Berry
extracted from and stored in the subject tank the crude oil at the above identified
Berry owned and controlled oil well operation site; (2) a Berry's pumper
employee did in fact go to this specific oil well site and perform his tasks of
thinning and heating the oil using the tank-lid on top of the tank; (3) HFWCR&M
did in fact send out an employee gauger to verify the Berry noted measurements;
(4) thereafter, HFWCR&M contacted Savage Industries to send a truck and driver
to this specific well site and tank operation to pump the oil from the tank into the
Savage truck for transportation to the Woods Cross Refinery.

23.     At all times relevant hereto, the Defendants Berry and HFWCR&M
and HFWCR all had individual legal duties to the driver of the Savage Industries
truck to provide a safe working area to said driver to be able to safely perform all
of the necessary tasks involved in the following initial truck driver job-tasks: (1)
to safely open and access the tank-lid top to investigate the amount of oil in the
tank; (2) to verify the thinness of the oil; and (3) to verify the temperature of the
oil.

24.     As is set out in detail above, Berry, the oil well project and facility
owner who contracted to sell the oil to  HFWCR&M and HFWCR; and the
purchaser HFWCR&M and HFWCR who contracted with Savage Industries to
pump and transport the oil; all owed a legal duty of reasonable care to allow the

7

specific Savage Industry driver to safely perform all of the above initial driver duties involved in beginning to pump and thereafter transport the oil to Woods Cross Refinery.

25.    Berry had a duty to maintain and inspect the oil tank and to keep the tank in a safe and reasonable condition, including ensuring adequate venting processes and/or venting equipment in place to not allow crude oil condensate/gases to build up in the tank to the point that would cause the tank to be dangerously pressurized, so that when the tank-lid is opened by the truck driver [a business invitee on the site to perform his necessary initial tasks to pump and transport Berry's oil] condensate is not launched/expelled from the lid and onto and into the driver's person.

26.    Berry had a duty to maintain the oil tank in a safe condition and to warn all oil site workers and business invitees, including employees of any independent third-party employer, of any specific dangers at this site pertaining to condensate gas exposures. Further Berry had a duty to mandate – as the oil well site owner – to all business invitees any and all necessary safety precautions to be put in place; and/or equipment that needed to be worn; and/or any warning devices to be utilized while at this specific oil well operations site.

27.    Berry had a duty to warn all employees or business invitees that access any and all oil well sites and tanks deemed to be dangerous to any employee or employee of an independent employer due to crude oil condensate exposures; and to warn any and all employees and business invitees of the fact that this specific tank was deemed to be failing to operate adequately and to vent

8

the condensate gases/fumes properly to prevent a pressurized tank that would potentially expose anyone who has to access the tank-lid area.

28.     Berry knew or should have known of the dangerous condition of this tank at this specific site pertaining to the collection and pressurized nature of the crude oil condensation.

29.     When HFWCR&M and HFWCR contracted with an independent third party to send a driver  to perform the pumping and transportation of oil from the Berry tank that now contains the oil newly purchased by HFWCR&M and HFWCR, these Defendants also had a duty to ensure that the oil tank being accessed was in a safe condition, and also had a duty to warn all business invitees, including employee drivers of any independent third party, of any specific dangers at this site pertaining to condensate gas exposures.

30.     HFWCR&M and HFWCR had a duty – as the  new owner of the Berry oil still stored in the Berry tank and contracted to be transported by a Savage driver – to all business invitees who will need to access their newly purchased oil, to mandate any and all necessary safety precautions to be put in place; and/or equipment that needed to be worn; and/or any warning devices to be utilized while at this specific oil well operations site.

31.     HFWCR&M and HFWCR had a duty to warn all employees and/or business invitees that access any or all sites containing oil purchased by them as to any dangers - to any employee or employee of an independent employer/business invitee - due to crude oil condensate exposures; and to warn any and all employees and business invitees of the fact that this specific tank was

9

deemed to be failing to operate adequately and to vent the condensate
gases/fumes properly to prevent a pressurized tank that would potentially
expose anyone who has to access the tank-lid area.

32.     Both the Berry management and the HFWCR&M and HFWCR
management knew or should have known about the dangers of crude oil
condensate exposures to individuals needing to access this specific oil tank
facility. In addition, they should have adequately warned Plaintiff of this
extremely dangerous site.

33.     Prior to the date of this injury incident, none of the above-named
Defendants ever warned Plaintiff - as a business invitee – as to this site's specific
dangers of a pressurized condensate tank issue that would lead to a tank-lid
explosion of condensate onto and into the business invitee driver.

34.     Prior to the date of this injury incident, none of the above-named
Defendants ever put into place any necessary mandated safety precautions,
warnings, and/or the necessary gas monitoring necessary to make this a safe site
to access the tank lid and tank for this Plaintiff as a business invitee working on
their site that contained crude oil tanks and crude oil with the specific dangers of
a pressurized tank condensate condition that would lead to a tank-lid explosion
of condensate onto and into the business invitee driver.

35.     At the date of this injury incident, Plaintiff was operating a body
mount crude hauling truck routinely used for more remote locations in the Uinta
Basin area. Plaintiff had been employed by Savage for four years as a crude oil

truck driver before this injury incident on December 26, 2017 at the above-described well location.

36. On average Plaintiff had worked 5 days a week with one trip and a single loading process per day over the prior four years. On this date and time he performed the exact same process as he had been trained to perform and had experience in performing in the overall pumping and transportation of crude oil.

37. As is set out above, the driver after arriving at the oil well site first parks his truck and then proceeds up the tank ladder to begin his initial tasks in pumping the oil from the tank and into his crude oil truck. The task involves the driver verifying the accuracy of the "run sheet" first developed by Berry and its pumper and later by the HFWCR&M and HFWCR employee/gauger, which indicates the amount of oil in the tank being pumped and transported. Second, the driver must verify the temperature and thinness of the crude oil to be pumped from the tank and into the crude oil truck.

38. In order for the driver to perform these initial mandatory tasks, he has to open and access the oil from the same tank-lid previously accessed and utilized by both the Berry and HFWCR&M and HFWCR employees.

39. After using the metal stairway to access the top of the tank and the tank-lid area, the driver first looked at the site's windsock to determine an up-wind location to place himself when accessing the tank lid from the scaffolding attached to the tank. After placing himself upwind from the tank-lid, the driver next attempted to open the tank-lid latch to facilitate opening the entire tank-lid.

This first attempt was performed up-wind and by leaning as far as he was physically able from the lid and to still be able to physically access the lid latch.

40.     On this date and on his first attempt to open the tank-lid latch, the latch would not open as the rubber seal was still secured and stuck, preventing the latch from releasing. This was the first time this had happened to Plaintiff over his past four years of experience. He thereafter attempted a second time to release the latch by lifting up the latch/lid forcefully with his hand. To facilitate this second attempt Plaintiff had to lean more directly near and over the top of the tank-lid and thus he had to expose his head and torso in this area near and over the tank-lid area.

41.     It was during this second attempt, with Plaintiff in a crouching position, that he leaned over and used his right hand to lift on the tank-lid. When the lid finally became unstuck and finally opened and a condensate explosion occurred spewing a warm clear liquid condensate spray over his face, head and torso. As he had some goggles covering his eyes there was not any direct contact into his eyes.

42.     He immediately wiped as much of the sprayed condensate off his face, beard and overalls as he could with rags he had brought up to complete his tasks. After a few initial moments he elected to try to keep the process going and thereafter was able to take his measurements through the tank lid and to verify the necessary information on the run-sheet. He thereafter was able to use the stairway/handrail to access the ground area and to begin and finish the several consecutive tasks to facilitate the actual pumping of the oil from the tank and into

12

the truck. Routinely this entire pumping process to remove the oil from the tank and to fill up the two crude oil tanks takes around an hour to fully complete.

43.    During the ground-based tasks, Plaintiff was working with his coveralls  that had been covered and soaked with the exploded condensate. During these consecutive physically tasking jobs he began to feel light-headed. Sometime after he had completed several of the initial tasks involved to commence the pumping process, he passed out and fell to the ground after losing consciousness. Plaintiff does not know exactly how long he remained unconscious. When he awoke he was on his knees covered in crude oil from a pumping leak from his "pup" rear truck tank.

44.    When he awoke he was very confused and was in a panic and scared that he had died, or that he was going to die if he once again lost consciousness.

45.    He was able to shut off the pumping valve to prevent further leaking of oil from his crude oil tank on his truck. He next was able to call his dispatcher and report the events and ask for help. He next called his wife and reported the events to her. It took almost two hours for help to arrive. During this time Plaintiff worked to stay up-right and to stay awake by walking in circles and trying not to go to sleep.

46.    The Savage field supervisor, David Palacios, arrived and Plaintiff related the events described above to him. The supervisor provided Plaintiff with a new set of clean cover overalls and helped him change into the clean clothes. During this time the supervisor commented that his coveralls were saturated from the condensate. Further, even after Plaintiff had changed into the clean

13

clothes he was still covered in the condensate and had a very strong odor on his person, so they both had to roll down the windows to attempt to lessen the odor even though this was in late December and it was very cold.

47.    The supervisor then drove Plaintiff to a Vernal clinic where he was seen by a staff PA-C. Plaintiff remained confused and scared during all of this time. He was told that he was hit with condensate and was released to go home and he was informed that hopefully his symptoms would resolve in 24-48 hours.

48.    Plaintiff's symptoms did not resolve in that time frame. He was not able to return to work and has not returned to gainful employment as of the present date. He thereafter began to see a series of physicians and neuro-psychologists to both diagnose and treat the injuries and symptoms sustained in this injury incident. He has been diagnosed by several health care providers with significant neuro-cognitive deficits and PTSD resulting from the exposures to the crude oil condensate.

49.    It has been scientifically established that crude oil condensate has multiple dangerous chemical components. One of the main components of condensate is Hydrogen sulfide (H2S). It is well known that after exposure to H2S that the severity of physical and mental symptoms gradually increases over several hours and that the scope of the related condensate's set of symptoms depends on the extent of the overall exposure to H2S. The symptoms are varied and can progress to unconsciousness and collapse and can lead to oxygen displacement, anaesthetizing, brain injury and even death within 48 hours.

14

49.     Plaintiff submits that the above-named Defendants owed a duty of reasonable care to their sub-contractors, including Savage Industries and to Cody Skinner, to warn them of all known dangers posed by unprotected exposure to and inhalation of crude oil condensate, and to notify them of all dangers and thereafter to mandate and require them to adopt specified adequate safety measures to protect against such known dangers – as set and established by the above-named Defendants.

50.     Plaintiff submits that under the applicable premises liability established law a special relationship existed between Plaintiff and the above-named Defendants because Defendants were owners of the physical oil well site and were the joint owners of the crude oil to be transported by Plaintiff as their joint business invitee. Tort law has long recognized that a special relationship exists between a landowner [oil well site owner and the joint owner of the oil to be transported] and persons he invites onto this land/oil well project. *See Jeffs,* 2012 UT 11 at ¶8; *Webb v. University of Utah,* 2005 UT 80, ¶ 10, 125 P.3d 906, *overruled on other grounds by Cope v. Utah Valley State College,* 2014 UT 53, ¶ 2, 342 P.3d 243. "One who holds his land open for the reception of invitees is under a greater duty in respect to its physical condition than one who permits the visit of a mere licensee." Restatement (Second) of Torts § 343 cmt/ b. An invitee expects "that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation." *Id.*

51.     In this case, Defendants jointly invited Savage Industries and its employee Cody Skinner to enter onto their land/project and to work in and around

15

the Berry oil tank and their jointly owned stored oil and with the potentially

hazardous substance, crude oil condensate, that the Defendants owned, collected,

treated, measured and jointly controlled. The nature of the injurious conduct and the

relationship between the parties impose a duty of reasonable care to Plaintiff on

behalf of all of the named Defendants.

52.    The imposition of a duty of reasonable care upon Defendants and

to this Plaintiff is further supported by section 343 of the Restatement (Second)

of Torts:

> A possessor of land is subject to liability for physical harm caused to
> his invitees by a condition on the land if, but only if, he knows or by
> the exercise of reasonable care would discover the condition, and
> should realize that it involves an unreasonable risk of harm to such
> invitees, and should expect that they will not discover or realize the
> danger, or will fail to protect themselves against it, and fails to
> exercise reasonable care to protect them against the danger.

53.    On information and belief, the tank being accessed by Plaintiff on

this date was not properly maintained, and the venting process was ineffective,

and this allowed the tank's crude oil to create pressurized crude oil condensate in

the top area of the tank. This pressurized condition created the dangerous

condition that resulted in the explosion of the chemically lethal condensate when

the Plaintiff opened the lid on December 26, 2017.

54.    On information and belief, the employees of the above-named

Defendants who preceded this Plaintiff in accessing the tank contents and the

tank lid should have been aware of the dangerous condition of the creation of

pressurized condensate from the ineffective venting process or other negligent

maintenance issues with this older oil storage tank.

16

## FIRST CLAIM FOR RELIEF

55.     The above-stated paragraphs are incorporated by reference and re-alleged as if fully stated herein.

56.     Defendants were negligent and owed a duty of reasonable care to Plaintiff who could be foreseeably harmed by Defendants' breach of the applicable standard of care referred to in this Complaint.

50.     Defendants were negligent and breached the applicable standard of care as set forth in the above paragraphs.

## DAMAGES

51.     Defendants' above-stated breaches of the applicable standards of care are the proximate cause of the above diagnosed injuries sustained by Plaintiff.

52.      Plaintiff has suffered special damages and general damages in a sum subject to proof at trial.

53.     Plaintiff is entitled to interest on the amount incurred on special damages pursuant to the applicable statutes of the State of Utah as follows:

   a.  Loss of income;

   b.  Loss of enjoyment of life;

   c.  Mental anguish;

   d.  Physical and emotional pain and suffering;

   e.  General damages:

   f.  Special damages;

17

WHEREFORE, Plaintiff prays for damages from Defendants and requests of the Court:

1.      Special damages and general damages in an amount subject to proof at trial, and the applicable interest thereon allowed under the statutes of the State of Utah - and under Tier 3 status of the URCP.

2.      All costs to be taxed to Defendants;

3.      Such other and further relief as the Court deems just and proper, including interest on all special damages according to the applicable statutes.


DATED this  17th day of September 2019.


                    /s/Lynn C. Harris
                    JONES WALDO
                    HOLBROOK AND MCDONOUGH
                    *Attorneys for Plaintiffs*


**DEMAND FOR TRIAL BY JURY**

Plaintiff demands that all of the issues in all counts above be tried by jury.


DATED this 17th day of September 2019.


                    /s/Lynn C. Harris
                    JONES WALDO
                    HOLBROOK AND MCDONOUGH
                    *Attorneys for Plaintiffs*

19168.39

HARRIS LC

CONSTABLE'S
PROOF OF SERVICE

PLAINTIFF: CODY DEE SKINNER                    CASE:    190700923

vs.
                                               Court Date:
DEFENDANT: BERRY PETROLEUM COMPANY LLC

PROCESS:
        SUMMONS / COMPLAINT

THE UNDERSIGNED PERSON HEREBY CERTIFIES:

        1) I served this process in the manner indicated below.
        2) I was at the time of this service a duly qualified and acting peace officer or a person over the age of 18 years.
        3) I am not a party to this action. I endorsed on the front page the date and time of service and my company information.

I served: **BERRY PETROLEUM COMPANY LLC**


Date Served: 9/26/2019, AT 09:37    HOURS

Address of Service: 1108 E S UNION AVE        ,

              MIDVALE

( X ) Served on this business or organization by giving a copy to or leaving a copy with
HOLLI THARP, CT CORP


who is registered agent, or a managing agent, officer, or employee or person in charge
of said organization, designated to receive service of such process pursuant to Rule 4-(d)(1)E,
Utah Rules of Civil Procedure.

ALSO TO BE TRIED:


              Pursuant to 78b-5-705: I certify under criminal penalty of the State of
              Utah that the foregoing is true and correct.

                   /s/

              9/26/2019


                            Constable / Deputy/Private Investigator /Server
Service $    20         95 WEST 100 SOUTH #963 PROVO UT 84603
Mileage $

              ┌──────────┐
              └──────────┘


TOTAL $    20
FEE CHARGED PER UCA 17-25a-4-2
FEE NOT SWORN TO BY SERVER

Lynn C. Harris
JONES WALDO HOLBROOK & MCDONOUGH
3325 N. University Ave., Suite 200
Jamestown Square, Clocktower Bldg.
Provo, Utah 84604
Telephone:  801-375-9801
lharris@joneswaldo.com

*Attorneys for Plaintiff*

---

### IN THE SECOND JUDICIAL DISTRICT
### IN AND FOR DAVIS COUNTY, STATE OF UTAH

| | | |
|---|---|---|
| CODY DEE SKINNER, | : | |
| | : | |
| Plaintiff, | : | SUMMONS |
| | : | |
| vs. | : | |
| | : | |
| BERRY PETROLEUM COMPANY, LLC; | : | |
| HOLLY FRONTIER WOODS CROSS | : | Case No.:       190700923 |
| REFINING & MARKETING LLC; AND | : | |
| HOLLY FRONTIER WOODS CROSS | : | |
| REFINING LLC, | : | |
| | : | |
| Defendant, | : | JUDGE:  John R. Morris |
| | : | |

You are hereby summoned and required to file an answer in writing to the attached Complaint with the Clerk of the above-entitled Court, located at 800 West State Street, PO Box 769, Farmington, UT 84025, and to serve upon, or mail to

Plaintiff's attorney, at the address shown above, a copy of said answer, within thirty (30) days after service of this Summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in said Complaint, which has been filed with the Clerk of the Court and a copy of which is hereto annexed and herewith served upon you.

DATED this 25th day of September 2019.

/s/Lynn C. Harris
LYNN C. HARRIS
Attorney for Plaintiff

Serve Defendant:

Berry Petroleum Company, LLC
Registered Agent of Service:
CT Corporation System
1108 E. South Union Ave
Midvale, UT 84047

19168.38

HARRIS LC

CONSTABLE'S
PROOF OF SERVICE

PLAINTIFF: CODY DEE SKINNER                          CASE:     190700923

vs.                                          Court Date:

DEFENDANT: HOLLY FRONTIER WOODS CROSS REFINING LLC

PROCESS:
SUMMONS / COMPLAINT

THE UNDERSIGNED PERSON HEREBY CERTIFIES:

1) I served this process in the manner indicated below.
2) I was at the time of this service a duly qualified and acting peace officer or a person over the age of 18 years.
3) I am not a party to this action. I endorsed on the front page the date and time of service and my company informa·

I served: HOLLY FRONTIER WOODS CROSS REFINING LLC

Date Served: 9/26/2019, AT 09:37    HOURS

Address of Service: 1108 E S UNION AVE            ,

MIDVALE

( X ) Served on this business or organization by giving a copy to or leaving a copy with
HOLLI THARP, CT CORP

who is registered agent, or a managing agent, officer, or employee or person in charge
of said organization, designated to receive service of such process pursuant to Rule 4-(d)(1)E,
Utah Rules of Civil Procedure.

ALSO TO BE TRIED:

Pursuant to 78b-5-705: I certify under criminal penalty of the State of
Utah that the foregoing is true and correct.

/s/              Mark Fernlund

9/26/2019
                    /s/ Mark Fernlund,  Utah P.I. license A127531

                    Constable / Deputy/Private Investigator /Server

Service $   20          95 WEST 100 SOUTH #963 PROVO UT 84603
Mileage $   32.5


TOTAL $    52.5
FEE CHARGED PER UCA 17-25a-4-2
FEE NOT SWORN TO BY SERVER

Lynn C. Harris
JONES WALDO HOLBROOK & MCDONOUGH
3325 N. University Ave., Suite 200
Jamestown Square, Clocktower Bldg.
Provo, Utah 84604
Telephone: 801-375-9801
lharris@joneswaldo.com

*Attorneys for Plaintiff*

---

### IN THE SECOND JUDICIAL DISTRICT
### IN AND FOR DAVIS COUNTY, STATE OF UTAH

| | | |
|---|---|---|
| CODY DEE SKINNER, | : | |
| | : | |
| Plaintiff, | : | SUMMONS |
| | : | |
| vs. | : | |
| | : | |
| BERRY PETROLEUM COMPANY, LLC; | : | |
| HOLLY FRONTIER WOODS CROSS | : | Case No.:      190700923 |
| REFINING & MARKETING LLC; AND | : | |
| HOLLY FRONTIER WOODS CROSS | : | |
| REFINING LLC, | : | |
| | : | |
| Defendant, | : | JUDGE: John R. Morris |
| | : | |

You are hereby summoned and required to file an answer in writing to the attached Complaint with the Clerk of the above-entitled Court, located at 800 West State Street, PO Box 769, Farmington, UT 84025, and to serve upon, or mail to

Plaintiff's attorney, at the address shown above, a copy of said answer, within thirty (30) days after service of this Summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded in said Complaint, which has been filed with the Clerk of the Court and a copy of which is hereto annexed and herewith served upon you.

DATED this 25th day of September 2019.

　/s/Lynn C. Harris　　　　　　　　　
LYNN C. HARRIS
Attorney for Plaintiff

Serve Defendant:

Holly Frontier Woods Cross Refining LLC
Registered Agent of Service:
CT Corporation System
1108 E. South Union Ave
Midvale, UT 84047

19168.40

HARRIS LC

CONSTABLE'S
PROOF OF SERVICE

PLAINTIFF: CODY DEE SKINNER                    CASE:    190700923

                vs.
                                               Court Date:
DEFENDANT: HOLLY FRONTIER WOODS CROSS REFINING & MARKETIN LLC

PROCESS:
        SUMMONS / COMPLAINT

THE UNDERSIGNED PERSON HEREBY CERTIFIES:

        1) I served this process in the manner indicated below.
        2) I was at the time of this service a duly qualified and acting peace officer or a person over the age of 18 years.
        3) I am not a party to this action. I endorsed on the front page the date and time of service and my company information.

I served: **HOLLY FRONTIER WOODS CROSS REFINING & MARKETIN LLC**

**Date Served: 9/26/2019, AT 09:37    HOURS**

Address of Service: **1108 E S UNION AVE**        ,

                **MIDVALE**

( X ) Served on this business or organization by giving a copy to or leaving a copy with
HOLLI THARP, CT CORP

who is registered agent, or a managing agent, officer, or employee or person in charge
of said organization, designated to receive service of such process pursuant to Rule 4-(d)(1)E,
Utah Rules of Civil Procedure.

ALSO TO BE TRIED:

                        Pursuant to 78b-5-705: I certify under criminal penalty of the State of
                        Utah that the foregoing is true and correct.

                        /s/

                9/26/2019

                                Constable / Deputy/Private Investigator /Server
Service $    20
                                95 WEST 100 SOUTH #963 PROVO UT 84603
Mileage $

TOTAL $    20
FEE CHARGED PER UCA 17-25a-4-2
FEE NOT SWORN TO BY SERVER

Lynn C. Harris
JONES WALDO HOLBROOK & MCDONOUGH
3325 N. University Ave., Suite 200
Jamestown Square, Clocktower Bldg.
Provo, Utah 84604
Telephone: 801-375-9801
lharris@joneswaldo.com

*Attorneys for Plaintiff*

---

## IN THE SECOND JUDICIAL DISTRICT
## IN AND FOR DAVIS COUNTY, STATE OF UTAH

---

| | | |
|---|---|---|
| CODY DEE SKINNER, | : | |
| | : | |
| Plaintiff, | : | SUMMONS |
| | : | |
| vs. | : | |
| | : | |
| BERRY PETROLEUM COMPANY, LLC; | : | |
| HOLLY FRONTIER WOODS CROSS | : | Case No.:      190700923 |
| REFINING & MARKETING LLC; AND | : | |
| HOLLY FRONTIER WOODS CROSS | : | |
| REFINING LLC, | : | |
| | : | |
| Defendant, | : | JUDGE: John R. Morris |
| | : | |

---

You are hereby summoned and required to file an answer in writing to the attached Complaint with the Clerk of the above-entitled Court, located at 800 West State Street, PO Box 769, Farmington, UT 84025, and to serve upon, or mail to

Plaintiff's attorney, at the address shown above, a copy of said answer, within thirty (30) days after service of this Summons upon you.

      If you fail to do so, judgment by default will be taken against you for the relief demanded in said Complaint, which has been filed with the Clerk of the Court and a copy of which is hereto annexed and herewith served upon you.

      DATED this 25th day of September 2019.

                                /s/Lynn C. Harris
                                LYNN C. HARRIS
                                Attorney for Plaintiff

Serve Defendant:

Holly Frontier Woods Cross Refining & Marketing LLC
Registered Agent of Service:
CT Corporation System
1108 E. South Union Ave
Midvale, UT 84047