IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CODY DEE SKINNER,<br><br>                       Plaintiff,<br>v.<br><br>BERRY PETROLEUM COMPANY, LLC; HOLLYFRONTIER REFINING & MARKETING LLC,<br>                       Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR A FRCP RULE 16 SCHEDULING CONFERENCE<br><br>Case No. 1:19-cv-00124<br><br>Judge Ted Stewart |

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment[1] and Plaintiff's Motion for a FRCP Rule 16 Scheduling Conference.[2] For the reasons discussed below, the Court will deny both Motions.

I. BACKGROUND

Plaintiff, Cody Dee Skinner files suit against Defendants Berry Petroleum Company, LLC ("Berry") and HollyFrontier Refining & Marketing, LLC ("HollyFrontier") for injuries Plaintiff incurred while employed by Savage Industries Inc. ("Savage") as a crude oil truck driver.[3] Berry owns and operates an oil well extraction site and operation in the Uinta Basin.[4]

---

[1] Docket No. 48.

[2] Docket No. 69.

[3] Docket No. 17.

[4] Docket No. 59, at 1–2.

HollyFrontier contracts with Berry to purchase oil, and contracts with Savage to pump and transport that oil via truck to HollyFrontier's refinery for processing and sale.[5]

Following extraction, the crude oil is stored in large metal tanks pending purchase and transportation to the refinery.[6] Prior to transport, Berry and HollyFrontier employees access the oil via the tank lid or "thief hatch" to prepare it and perform necessary measurements.[7] Gases comprised of dangerous chemicals can build up in the tank, including hydrogen sulfide ("H2S"). H2S is known to cause physical and mental symptoms which vary in severity depending on the level of exposure, but at most serious include unconsciousness, collapse, oxygen displacement, brain injury, and death.[8] The storage tanks are fitted with a ventilation system to allow condensation gases and fumes to vent outside of the tank and prevent pressurized build-up of the gases and injury.[9]

Prior to Plaintiff arriving to pump the oil into his truck for transport on December 26, 2017, all the above-described steps were completed.[10] On the day of the incident, Plaintiff arrived at the Berry well site and accessed the oil through the thief hatch.[11] After pulling the vertical lever to vent the hatch, the hatch did not release any gases, but when Plaintiff unlatched the hatch to open it fully he was hit with condensate.[12] Plaintiff alleges that later as he was working on the ground to complete the pumping, he began to feel lightheaded, fell to the ground,

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 4, 28.
[8] *Id.* at 7–8.
[9] *Id.* at 4–5.
[10] *Id.* at 28, 30.
[11] *Id.* at 30.
[12] *Id.*

and lost consciousness.[13] When he awoke, he was covered in crude oil from a leak in his truck's rear tank but was able to shut off the pump.[14] He was later treated at a nearby clinic to return to work the next day.[15] Plaintiff reports that he has been unable to return to work with Savage or obtain any gainful employment due to diagnosed neuro-cognitive deficits and PTSD related to his exposure to the crude oil condensate.[16]

Plaintiff moves for partial summary judgment against Berry asserting that he is entitled to judgment as a matter of law because (1) Berry owed a duty of care to Plaintiff as a business invitee, and (2) Berry breached its duty of care to Plaintiff.[17]

## II. LEGAL STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[18] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[19] "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the

---

[13] *Id.* at 30.

[14] *Id.* at 8–9.

[15] *Id.*

[16] Docket No. 17, ¶ 46.

[17] Docket No. 48, at 1.

[18] Fed. R. Civ. P. 56(a).

[19] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

claim."[20] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[21]

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact."[22] "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[23] Once a movant has carried its initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[24]

## III. DISCUSSION

To establish a negligence claim, a plaintiff must demonstrate the following elements: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach of the duty was the proximate cause of the plaintiff's injury, and (4) the plaintiff in fact suffered injuries or damages.[25] Plaintiff asks the Court to find there is no genuine issue of material fact and he is entitled to judgment as a matter of law on both the duty and breach elements of his negligence claim.

---

[20] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[21] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[22] *Adler*, 144 F.3d at 670–71.

[23] *Id.* at 671; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[24] *Adler*, 144 F.3d at 671 (quoting Fed. R. Civ. P. 56(e)).

[25] *Gonzalez v. Russell Sorenson Constr.*, 2012 UT App. 154, ¶ 20, 279 P.3d 422.

"A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."[26] "The existence of a 'duty must be determined as a matter of law and on a categorial basis for a given class of tort claims.'"[27] While misfeasance, or "active misconduct working positive injury to others" generally carries a duty of care, nonfeasance or "passive inaction, a failure to take positive steps to benefit others . . . or protect them from harm not created by any wrongful act of the defendant," only implicates a duty if there is a special legal relationship.[28] A special legal relationship exists between a possessor of land and his or her invitees to that land.[29]

A. MISFEASANCE

Plaintiff argues that Berry's policy not to perform manufacturer-mandated maintenance on the lids, seals, and gaskets of thief hatches was active misconduct constituting misfeasance.[30] "The line between acts and omissions is sometimes subtle."[31] Utah courts generally ask "whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good."[32]

---

[26] *AMS Salt Indus., Inc. v. Magnesium Corp of Am.*, 942 P.2d 315, 320–21 (Utah 1997) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53, at 356 (5th ed. 1984)).

[27] *Davis v. Wal-Mart Stores, Inc.*, 2022 UT App 87, ¶ 10, 514 P.3d 1209 (quoting *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228).

[28] *Jeffs*, 2012 UT 11 ¶ 7; *MacFarlane v. Applebee's Rest.*, 2016 UT App 158, ¶ 8, 378 P.3d 1286.

[29] Restatement (Second) of Torts § 314A (Am. L. Inst. 1965).

[30] Docket No. 59, at 34.

[31] *Scott v. Universal Sales, Inc.*, 2015 UT 64, ¶ 35, 356 P.3d 1172.

[32] *Id.* (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896, 898 (1928) (Cardozo, C.J.)) (internal quotation marks omitted).

Not only does Plaintiff raise this argument for the first time in his Reply, he also fails show that the alleged failure to conduct maintenance on the lids, seals, and gaskets of the oil tanks advances to the point of "launching a force or instrument of harm." Therefore, the Court finds that Plaintiff has not shown he is entitled to judgment as a matter of law that Berry owed Plaintiff a duty under a misfeasance theory.

B. NONFEASANCE

In the case of nonfeasance or an omission by a party, there must be a special relationship between the parties, such as an invitee, for the Court to find a duty of care existed.[33] The Utah Supreme Court has adopted the Restatement (Second) of Torts § 332(3), which states "the status of invitee includes 'business visitors who are invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'"[34]

Here, it is undisputed that Berry "owns and operates oil well drilling and storage sites in the Uinta Basin oil fields, including the oil well site, 14-29-54, where this incident occurred."[35] Further, it is undisputed that HollyFrontier contracted with Berry to purchase oil and HollyFrontier contracted with Savage to unload and pump the crude oil from Berry's tanks into trucks for transport to HollyFrontier's refinery for processing.[36] It is also undisputed that Plaintiff was employed by Savage as a crude oil truck driver.[37] As such, the Court finds that Plaintiff was a business invitee of Berry.

---

[33] *See* Restatement (Second) of Torts § 314A.

[34] *Hale v. Beckstead*, 2005 UT 24, ¶ 33, 116 P.3d 263 (quoting Restatement (Second) of Torts § 332(3)); *see Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991) ("Owners of land must . . . exercise due care and prudence for the safety of business invitees.").

[35] Docket No. 53, at 4.

[36] *Id.*

[37] *Id.*

"[The] [Utah] [S]upreme [C]ourt has made clear that the open and obvious danger rule, as set forth in Restatement sections 343 and 343A 'defines the duty of care a possessor of land owes to invitees. It does not excuse negligence, it defines it.'"[38] And Utah courts have "implicitly treated" the open and obvious danger rule as presenting factual questions that "might [] alter[] the legal question[] of whether a duty existed."[39] "If the open and obvious danger rule applies, then the land possessor owes no duty to its invitees with respect to the open and obvious danger and therefore cannot be held liable for any injury caused thereby."[40] Restatement (Second) of Torts § 343, as adopted by the Utah Supreme Court states,

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against danger.[41]

"Application of the open and obvious danger rule therefore calls for a context-specific analysis."[42] In other words, "while the question of whether a duty existed is a question of law

---

[38] *Zazzetti v. Prestige Senior Living Ctr. LLC*, 2022 UT App 42, ¶ 23, 509 P.3d 776 (quoting *Hale*, 2005 UT 24, ¶ 23).

[39] *Downham v. Arbuckle*, 2021 UT App 121, ¶ 25, 502 P.3d 312 (citing *Hale*, 2005 UT 24, ¶¶ 32, 37–38).

[40] *Id.* ¶ 12 (quoting *Coburn v. Whitaker Constr. Co.*, 2019 UT 24, ¶ 12, 445 P.3d 446).

[41] *English v. Kienke*, 848 P.2d 153, 156 (Utah 1993) (applying Restatement (Second) of Torts § 343 to determine the duty a possessor of land owes to invitees in a premises liability action).

[42] *Zazzetti*, 2022 UT App 42, ¶ 25 (internal quotation marks and citation omitted); *see also Downham*, 2021 UT App 121, ¶ 26–27 (agreeing with other jurisdictions that the open and obvious danger doctrine as it relates to a duty of care involves questions of fact that "[i]f jurors could disagree on either front, then the district court's grant of summary judgment [is] premature.").

reserved for the court, that question sometimes turns on subsidiary questions that are factual in nature and thus more appropriately left to the jury."[43] As such, "[m]ost cases involving claims of negligence are not susceptible to summary disposition."[44]

The first inquiry under § 343 is whether Berry knew or by exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to invitees. Plaintiff argues that it is undisputed that Berry did not perform any maintenance to the thief hatch causing an unreasonable risk of harm to Plaintiff.[45] From this, Plaintiff infers that Berry knew or by the exercise of reasonable care would discover that the hatch posed an unreasonable risk of harm. However, there is a genuine issue of material fact as to whether a lack of maintenance resulted in the hatch becoming unsafe. Moreover, Berry points to the declaration of its hired expert in chemical engineering, Dr. Palash Panja, wherein Dr. Panja states that it is highly unlikely that accumulation of volatile components and pressure build up could occur in the tank, rebutting Plaintiff's argument.[46] Dr. Panja states that if the hatch was defective, through weathering and other issues caused by lack of maintenance from 2006 to 2017, it would decrease the pressure in the tank because it would not seal properly.[47] Plaintiff acknowledges that when seals are missing or weathered they may not work and may not allow pressure to build in the tank.[48] Plaintiff cites to Warren Larsen's testimony in which he agreed that "it is possible to have a mini explosion and have the driver be exposed to condensate" where "the thief hatch is inoperable and the safety

---

[43] *Downham,* 2021 UT App 121, ¶ 22.

[44] *Id.* (quoting *Lyman v. Solomon*, 2011 UT App 204, ¶ 3, 258 P.3d 647).

[45] Docket No. 59, at 36–37.

[46] Docket No. 53, at 31.

[47] *Id.*

[48] Docket No. 59, at 31.

procedures are not in effect."[49] However, Mr. Larsen also agrees that if gaskets and seals on a thief hatch are deteriorated they could not hold in pressure.[50]

Berry also cites to Jason Lefler's testimony that if a hatch is opened too quickly, it could cause the condensate to splash up on the person opening it, which Plaintiff does not appear to dispute.[51] Plaintiff recites the National Institute for Occupational Safety and Health warning that opening thief hatches "can result in the release of high concentrations of hydrocarbon gases and vapors," and the American Petroleum Institute requirement that all critical equipment, including thief hatches, be inspected and maintained. However, these statements do not necessarily demonstrate that unmaintained thief hatch gaskets and seals posed an unreasonable risk to Plaintiff aside from the inherent risk associated with crude oil tanks.[52] Although many of the facts pertaining to the required and lack of maintenance are undisputed,[53] given Dr. Panja's declaration, Mr. Larsen and Mr. Lefler's testimony there are genuine issues of material fact as to whether the unmaintained thief hatch constituted an unreasonable risk to invitees such that Berry had a duty to either repair or warn them about. "[S]ummary judgment is appropriate in negligence cases only in the clearest instances."[54] As demonstrated by the parties' arguments above, that is not the case here. Accordingly, the Court will deny the Motion for Partial Summary Judgment.

Plaintiff argues for the first time in his Reply that Berry agreed to inspect the oil tank site and maintain it for the buyer and by doing so voluntarily engaged in an activity and failed to

---

[49] Docket No. 59-1, at 18, 61:1–8.

[50] *Id.* 63:5–11.

[51] Docket No. 59 at 4–5.

[52] *Id.* at 6, 24–25.

[53] *Id.* at 36–37.

[54] *Dwiggins*, 811 P.2d at 183; *Lyman*, 2011 UT App 204, ¶ 3.

exercise reasonable care in performing that undertaking.[55] Plaintiff does not provide an adequate legal basis to find that Restatement (Second) of Torts § 323 applies here. As such, the Court declines to find a duty existed under this theory.

C. SCHEDULING CONFERENCE

Plaintiff filed a Motion for a Rule 16 Scheduling Conference to request a Pre-Trial hearing. The Court denies the Motion and will refer this case to a Magistrate Judge to conduct a Settlement Conference, after which, the parties may request a pre-trial conference to set a trial schedule and date, if necessary.

IV. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 48) is DENIED; It is further

ORDERED that Plaintiff's Motion for a FRCP Rule 16 Scheduling Conference (Docket No. 69) is DENIED without prejudice. The Court will refer the parties to a Magistrate Judge to conduct a settlement conference by separate order.

DATED this 28th day of March, 2023.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[55] Docket No. 59, at 35 (citing to Restatement (Second) of Torts § 323).