IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CODY DEE SKINNER,<br><br>Plaintiff,<br>v.<br><br>BERRY PETROLEUM COMPANY, LLC;<br>HOLLYFRONTIER REFINING &<br>MARKETING LLC,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT HOLLYFRONTIER'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:19-cv-00124-TS-DBP<br><br>Judge Ted Stewart |

This matter is before the Court on Defendant HollyFrontier Refining & Marketing LLC's ("HollyFrontier") Motion for Summary Judgment.[1] As discussed below, Plaintiff fails to present sufficient evidence that HollyFrontier owed a duty to Plaintiff under a direct negligence theory or the retained control doctrine. Accordingly, the Court will grant summary judgment.

## I. BACKGROUND

Plaintiff Cody Dee Skinner brings this negligence suit against Defendants Berry Petroleum Company LLC (" Berry") and HollyFrontier for injuries he incurred while employed by Savage Industries Inc. ("Savage") as a crude oil truck driver. Berry owns and operates an oil well extraction and storage site in the Uinta Basin. HollyFrontier contracts with Berry to purchase oil and with Savage to transport that oil via truck to HollyFrontier's refinery for processing and sale. Following extraction, crude oil is stored in large metal tanks pending purchase and later transported to a refinery.[2] Prior to transport, Berry and HollyFrontier

---

[1] Docket No. 87.

[2] Docket No. 90, at 6.

employees access the oil via the tank lid or "thief hatch" to prepare it and perform necessary measurements. Gases comprised of dangerous chemicals can build up in the tank, including hydrogen sulfide ("H2S"). H2S is known to cause physical and mental symptoms that vary in severity depending on the level of exposure, but at most serious include unconsciousness, collapse, oxygen displacement, brain injury, and death.[3]

Prior to Plaintiff arriving to pump the oil for transport on December 26, 2017, both Berry and HollyFrontier employees accessed the oil tank. On December 23, 2017, Berry's lease operator, Trudi Clegg, measured the oil in the tank.[4] She later stated that she did not recall anything out of the ordinary with the tank.[5] The next day, HollyFrontier's gauger, Alex Arnold, visited the oil tank and measured the oil for purchase.[6] He testified that he does not remember the visit in particular or remember any problems with the tank, but if there was a problem, he would have reported it.[7]

Two days later, Plaintiff arrived at the Berry well site and accessed the oil through the thief hatch on the tank. After pulling the vertical lever to vent the hatch, the hatch did not release any gases, but when Plaintiff unlatched the hatch to open it fully, he was hit with condensate.[8] Plaintiff alleges that later as he was working on the ground to complete the pumping, he began to feel lightheaded, fell to the ground, and lost consciousness.[9] When he awoke, he was covered in

---

[3] *Id.* at 7.

[4] Docket No. 87, at 3.

[5] Docket No. 87-3, at 7:2–8:5.

[6] Docket No. 87-4, at 9:11–16, 10:24–12:8.

[7] *Id.* at 10:24–12:22.

[8] Docket No. 48-5, at 4.

[9] *Id.*

crude oil from a leak in his truck's rear tank but was able to shut off the pump.[10] He was later treated at a nearby clinic.[11] Plaintiff reports that he has been unable to return to work with Savage or obtain any gainful employment due to diagnosed neuro-cognitive deficits and PTSD related to his exposure to the crude oil condensate.

HollyFrontier files this Motion seeking summary judgment on two grounds: (1) HollyFrontier did not owe Plaintiff a duty, and (2) even if such a duty existed, there is insufficient evidence to show HollyFrontier breached the duty.[12]

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[13] The moving party bears the burden of showing that there is no genuine dispute of material fact.[14] "When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'"[15] And "once the movant points out an absence of proof on an essential element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary."[16]

---

[10] *Id.*

[11] *Id.*

[12] Docket No. 87, at 1–2.

[13] Fed. R. Civ. P. 56(a).

[14] *Ortiz v. Norton*, 254 F.3d 889, 893 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[15] *Id.* (quoting *Adler*, 144 F.3d at 671); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[16] *Hall v. Bellmon*, 935 F.2d 1106, 1111 n.5 (10th Cir. 1991) (citing *Celotex*, 477 U.S. at 322–23).

### III. DISCUSSION

Plaintiff asserts a single claim of negligence against HollyFrontier. To establish a negligence claim, a plaintiff must establish the following: (1) defendant owed plaintiff a duty, (2) defendant breached that duty, (3) the breach of the duty was the proximate cause of plaintiff's injury, and (4) plaintiff in fact suffered injuries or damages.[17] HollyFrontier asserts that Plaintiff fails to demonstrate sufficient evidence to support the duty and breach elements, and therefore it is entitled to summary judgment.

"Utah adheres to the general common law rule that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."[18] However, Utah also recognizes the retained control doctrine, which provides a narrow exception to the rule against independent contractor liability. This applies "where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care, but not enough to become an employer or a master of those over whom the control is asserted."[19]

Plaintiff argues that summary judgment should be denied because HollyFrontier owed and breached a duty under the retained control doctrine. Additionally, Plaintiff argues that HollyFrontier is liable under a direct negligence theory. The Court will address both arguments.

---

[17] *Gonzalez v. Russell Sorenson Constr.*, 2012 UT App 154, ¶ 20, 279 P.3d 422.

[18] *Thompson v. Jess*, 1999 UT 22, ¶ 13, 979 P.2d 322 (internal quotation marks and citations omitted).

[19] *Id.* ¶ 15.

A. RETAINED CONTROL

To determine "whether an employer exercised sufficient control to create liability under the retained control doctrine, [the court] appl[ies] the active participation standard."[20] "Under that standard, an employer has a duty to ensure the safety of its contractor's work where the employer 'actively participates' in the contractor's work."[21] "An employer actively participates if the employer 'directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished.'"[22] "When considering whether a defendant retained control over someone else, courts consider whether all the means of control collectively constitute retained control—not whether any individual means of control alone suffices for retained control."[23]

Plaintiff asserts that HollyFrontier maintained sufficient control collectively through the contract provisions, specific responsibility for site safety, and Arnold's active interference in gauging the oil.[24]

Plaintiff argues that although the contract between HollyFrontier and Savage established an independent contractor relationship, HollyFrontier retained some control over the means by which Savage performed its work via the contract language. The Utah Supreme Court has explained that "contractual provisions may create sufficient control for a contracting party to retain control over the other party."[25] Plaintiff points to the following obligations HollyFrontier

---

[20] *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 24, 215 P.3d 143.

[21] *Id.* (quoting *Thompson*, 1999 UT 22, ¶ 19).

[22] *Id.* (quoting *Begaye v. Big D Constr. Corp.*, 2008 UT 4, ¶ 9, 178 P.3d 343).

[23] *Boynton v. Kennecott Utah Copper, LLC*, 2021 UT 67, ¶ 57, 500 P.3d 847.

[24] Docket No. 90, at 21–23.

[25] *Boynton¸* 2021 UT 67, ¶ 56; *see Stanley v. Ameren Ill. Co.*, 982 F. Supp. 2d 844, 853 (N.D. Ill. 2013) ("The best indicator of whether a contractor has retained control over the

agreed to in support of his argument: to "make all necessary arrangements to purchase the Product;"[26] to "provide information regarding the pickup and delivery of the Product;" and to "use commercially reasonable efforts to cause the appropriate parties to provide [Savage] with suitable access to . . . the applicable Supply Point(s) where Product will be loaded in the Haulage units."[27]

The crux of Plaintiff's argument is that HollyFrontier retained control over Savage and Plaintiff's work through the "suitable access" contract term. He argues that the condition of the thief hatch was not suitable and, because Arnold, a HollyFrontier gauger, observed and used the thief hatch shortly before Plaintiff opened the hatch, the gauger must have known of the condition and contributed to the alleged unsafe condition by adding to the oil build-up.

"[A] party retains control if it controls 'the provision of the specific equipment that caused the injury.'"[28] While HollyFrontier agreed to provide suitable access to the tank for pick up, Plaintiff fails to demonstrate that HollyFrontier exercised control over the oil tank and does not provide any basis for the Court to conclude that by agreeing to provide suitable access to the tanks, HollyFrontier controlled the tank. Further, Plaintiff fails to demonstrate that HollyFrontier directed the means or methods by which Plaintiff accessed the tank or the oil inside.

The remaining contract provisions Plaintiff cites to involve HollyFrontier's obligation to arrange to purchase the product and provide information about pickup and delivery to Savage. Plaintiff provides no basis for the Court to conclude that these provisions involved HollyFrontier

---

subcontractor's work is the parties' contract, if one exists.") (internal quotation marks and citation omitted).

[26] Docket No. 90-1 ¶ 1(f).

[27] Docket No. 90, at 21–22 (quoting Docket No. 90-1 ¶ 4(a)).

[28] *Boynton*, 2021 UT 67, ¶ 58 (quoting *Thompson*, 1999 UT 22, ¶ 20).

exercising control over the thief hatch or tank or Plaintiff's means or method of carrying out his pumping and transporting responsibilities.

Plaintiff next argues that HollyFrontier had a specific responsibility for site safety via the contract provision in which it agreed to provide Savage with suitable access to the oil supply point. Contractual provisions in which one party "assum[es] responsibility for safety at the site [are] relevant to determining whether control is retained[,]"[29] as is the "actual control" exercised by the party.[30] Plaintiff fails to provide any evidence supporting his assertion that access to a thief hatch that "is safe, clean, and maintained"[31] falls under the scope of "suitable access" for pickup. The suitable access provision does not contain any such definition. Further, "the scope of any duty is defined by the amount of control the general contractor actually retains over the work."[32] Plaintiff does not put forth any evidence of actual control exercised by HollyFrontier over the hatch or tank or Plaintiff's method or manner in accessing it.

Further, there are many provisions in the contract assigning responsibility for safety to Savage, rather than HollyFrontier. The contract states that Savage shall perform its transportation services "in accordance with good, safe and workmanlike practices"[33] and "will maintain in

---

[29] *Hale v. Danny's Constr. Co., Inc.*, No. 99-4040, 2000 WL 358409, at *1 (10th Cir. Apr. 6, 2000).

[30] *Id.* at *1 & n.2 ("[T]he issue [of retained control] is one of fact based on contractual language *and* actual control.") (citations omitted); *see also Fleck v. ANG Coal Gasification Co.*, 522 N.W.2d 445, 448 (N.D. 1994) ("[T]he duty created by [the retained control theory] may arise in two ways: through express contractual provisions retaining the right to control the operative detail of some part of the work, or through the employer's actual exercise of such retained control at the jobsite.").

[31] Docket No. 90, at 22.

[32] *Hale*, 2000 WL 358409, at *1; *see also Thompson*, 1999 UT ¶ 15; Restatement (Second) of Torts § 414 (1965).

[33] Docket No. 90-1 ¶ 3(b).

effect an effective safety and injury prevention program."[34] Savage also assumed responsibility for complying with laws, including those related to safety.[35] And while HollyFrontier agreed to "use commercially reasonable efforts to cause the owner of the facilities receiving Product at the Delivery Points to operate and maintain such facilities in a prudent and safe manner[,]"[36] the contract does not contain the same obligation as it relates to the pickup points at Berry's tanks.

Finally, Plaintiff asserts that by sending Arnold to the tank to measure the oil and thereby contributing to oil build-up, HollyFrontier interfered with Plaintiff's own need to access the thief hatch under safe conditions. "[T]he requisite degree of control over the contractor's work entails affirmatively interfering with the subcontractor's *method* of performance or instructing that a less safe method be used."[37] Plaintiff fails to demonstrate that by sending Arnold to make the necessary measurements prior to its purchase of the oil, HollyFrontier actively interfered with Plaintiff's method of performance in collecting the oil.[38] There is no evidence showing that HollyFrontier exercised "such control over the means utilized that [Plaintiff and Savage] [could not] carry out the injury-causing aspect of the work in his or her own way."[39]

Therefore, the Court finds that Plaintiff has not put forth sufficient evidence to demonstrate that the retained control doctrine applies here.

---

[34] *Id.* ¶ 3(i).

[35] *Id.* ¶ 9.

[36] *Id.* ¶ 4(b).

[37] *Begaye*, 2008 UT 4, ¶ 10 (emphasis added); *see also Thompson*, 1999 UT 22, ¶¶ 22–23; *see e.g. Lewis v. N.J. Riebe Enters., Inc.*, 825 P.2d 5, 14–15 (Ariz. 1992) (concluding that the general contractor interfered with the subcontractor's method of performance by instructing a quicker but less safe method be implemented.).

[38] *See Begaye*, 2008 UT 4, ¶ 10 ("[T]he general contractor must exercise such control over the means utilized that the contractor cannot carry out the injury-causing aspect of the work in his or her own way.") (internal quotation marks and citation omitted).

[39] *Thompson*, 1999 UT 22, ¶ 21.

B. DIRECT NEGLIGENCE

"Once an employer goes beyond mere direction or control of the [independent] contractor's work and directly acts in such a way that causes an injury, the employer may be liable for its own direct negligence."[40]

Plaintiff argues that HollyFrontier is liable under direct negligence because HollyFrontier's employee visited the tank prior to the incident, creating an unsafe condition (misfeasance) and requiring HollyFrontier to warn of the unsafe condition (nonfeasance).

1. Misfeasance

a. Duty

"A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."[41] "The existence of a duty must be determined as a matter of law and on a categorial basis for a given class of tort claims."[42]

Plaintiff contends that there was a build-up of oil around the thief hatch, causing it to become sticky and allowing pressure to build in the tank causing Plaintiff's incident. Plaintiff's expert, Edward Ziegler, supports this assertion. In regard to HollyFrontier, Ziegler opines on the industry standard of care stating conclusively that as "[a] gatherer and transporter of crude oil[,] [HollyFrontier] must perform [those duties] in a manner that is prudent, proper, reasonable,

---

[40] *Magana*, 2009 UT 45, ¶ 38.

[41] *AMS Salt Indus., Inc. v. Magnesium Corp of Am.*, 942 P.2d 315, 320–21 (Utah 1997) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 53, at 356 (5th ed. 1984)).

[42] *Davis v. Wal-Mart Stores, Inc.*, 2022 UT App 87, ¶ 10, 514 P.3d 1209 (internal quotation marks and citation omitted).

responsible, and safe."[43] Ziegler does not provide a basis for this duty, either through regulation or actual industry practice.[44] Further, Plaintiff does not address the existence of a duty in his Response and presents no evidence of an industry custom or practice nor any case law to establish that HollyFrontier owed him a duty of care as a matter of law. Therefore, the Court finds that there is insufficient evidence to support that HollyFrontier owed Plaintiff a duty.

> b. Breach

However, even if the Court concluded that HollyFrontier owed Plaintiff a duty, Plaintiff also fails to present sufficient evidence of breach.

Plaintiff cites to *Magana v. Dave Roth Construction*, in which the plaintiff worked for a framing subcontractor hired by the defendant, a general contractor, to provide framing and crane work on a construction project.[45] There, the defendant's employee helped the subcontractor with unloading trusses for the project via crane when a truss fell on the plaintiff, paralyzing him. The plaintiff sued the general contractor asserting two negligence theories: direct and retained control. The Utah Supreme Court concluded that the lower courts erred in granting summary judgment as to whether the general contractor was liable under a direct negligence theory because there was a question of fact as to whether the defendant's employee participated in loading the truss that fell on the plaintiff.[46]

Unlike in *Magana*, in which the plaintiff testified that he observed the general contractor employee loading the trusses, Plaintiff here does not present sufficient evidence either through

---

[43] Docket No. 90-13 ¶ 1.8.

[44] *See id.* ¶¶ 4.1, 7.14, 10.12.

[45] *Magana*, 2009 UT 45, ¶ 7.

[46] *Id.* ¶ 39.

testimony or otherwise, to create a question of fact as to whether HollyFrontier's employee, Arnold, contributed to the oil build-up or created an unsafe condition at the tank.

Plaintiff asserts that Arnold's visit and measurement contributed to the oil buildup and created an unsafe condition at the tank. To support this assertion, Plaintiff cites to Arnold's testimony that, in his personal experience, there were times when he opened thief hatches that both gasses and liquids escaped.[47] This testimony regarded his experiences with thief hatches in general, not the thief hatch at issue here.

Plaintiff asks the Court to make a "reasonable inference" that Arnold created an unsafe condition because Arnold visited the hatch two days before Plaintiff. To support this, Plaintiff cites to Ziegler's opinion that Arnold would have observed that the thief thatch was not safe and was covered in oil.[48] Plaintiff also cites Ziegler's testimony about photos of the thief hatch taken at some point after the incident. Ziegler testified that the photos showed oil on top of the tank, which is common.[49] He further testified that the oil could have been dripped by a gauger while measuring the oil,[50] but also testified that the oil depicted in the photos "could be from oil getting blown out of the tank during the incident."[51] He did not testify that Arnold contributed to oil build-up on the tank or to an unsafe condition. Unlike the plaintiff's testimony in *Magana*, Plaintiff's only support is grounded in an expert's speculation.

---

[47] Docket No. 90-12, at 23:6–8.

[48] Docket No. 90, at 20.

[49] Docket No. 90-14, at 62:13–16.

[50] *Id.* at 61:21–62:7, 63:2–10.

[51] *Id.* at 62:23–63:1; *see also id.* at 63:2–10.

HollyFrontier asserts that Ziegler's opinion is "mere speculation" and "not enough to preclude summary judgment."[52] The Court agrees. Further, while the issue of whether to exclude Ziegler's expert opinion is not before the Court, in regard to HollyFrontier, Ziegler's proposed testimony and opinion is so removed from the facts in this case that it cannot serve as a basis to create an issue of fact and thereby, cannot preclude summary judgment in favor of HollyFrontier.[53]

2. Nonfeasance

Plaintiff also argues that HollyFrontier is liable for failing to warn him and Savage about the thief hatch. In the case of nonfeasance or an omission by a party, there must be a special relationship between the parties,[54] or a party must have previously committed itself to performance of such an undertaking by contract or otherwise.[55] Plaintiff asserts that because HollyFrontier "was contractually and affirmatively obligated to provide Savage with 'suitable' access to the injury-causing site, [HollyFrontier] and Savage had a special legal relationship" giving HollyFrontier a duty to prevent harm.[56] Plaintiff also attempts to support this through Ziegler's statements that HollyFrontier "had a duty to perform as a proper, prudent, reasonable, responsible, and safe gauger and gatherer of liquid hydrocarbons."[57] However, Plaintiff provides no legal basis for the Court to conclude that parties had a special legal relationship save for these conclusory assertions.

---

[52] Docket No. 97, at 13.

[53] *See Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.") (internal quotation marks and citation omitted).

[54] *See* Restatement (Second) of Torts § 314A.

[55] *See id.* § 323.

[56] Docket No. 90, at 20.

[57] *Id.* at 21.

Plaintiff also asserts that HollyFrontier owed him a duty by contractually agreeing to performance of an undertaking under Restatement (Second) of Torts sections 323, 324, and 324(a). Plaintiff does not cite to any specific contractual provision to support this contention, nor does Plaintiff provide any further legal basis for this argument.

Accordingly, the Court will grant summary judgment in favor of HollyFrontier as a matter of law.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant HollyFrontier's Motion for Summary Judgment (Docket No. 87) is GRANTED; It is further

ORDERED that Plaintiff and Defendant Berry are to file a Status Report within ten (10) days of this Order proposing trial dates and anticipated trial duration, after which the Court will set the matter for trial and schedule the remaining pretrial deadlines.

DATED July 31, 2024.

BY THE COURT:

_____

TED STEWART
United States District Judge